UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

Grow Green MI Inc.      Case No. 24-31158-jda
                                       Chapter 11
      Debtor.               Judge Applebaum
_____/

## COVER SHEET FOR FIRST DAY MOTION TO USE CASH COLLATERAL OR TO OBTAIN CREDIT

The debtor has filed a motion to use cash collateral or to obtain postpetition financing, which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D.M.), the debtor has identified below, by page and paragraph number, the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | ___ Yes<br><br>_X_ No | Page ___, ¶ ___ |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | ___ Yes<br><br>_X_ No | Page ___, ¶ ___ |

| | | |
|---|---|---|
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | _X_ Yes<br><br>_____ No | Page _2_, ¶ _2_ |
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>_X_ No | Page _____, ¶ _____ |

| | | |
|---|---|---|
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | ____ Yes<br><br>_X_ No | Page ____, ¶ ____ |

GOLDSTEIN, BERSHAD,& FRIED, P.C.

By: /s/ Scott M. Kwiatkowski
    Scott M. Kwiatkowski (P67871)
    Attorneys for Debtor
    4000 Town Center, Suite 1200
    Southfield, Michigan 48075
    (248) 355-5300
    scott@bk-lawyer.net

Dated: June 21, 2024

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

Grow Green MI Inc.  Case No.24-31158-jda
 Chapter 11
 Debtor. Judge Applebaum
_____/

# DEBTOR'S FIRST DAY MOTION FOR INTERIM AUTHORITY TO USE CASH COLLATERAL AND FOR RELATED RELIEF

Grow Green MI Inc. ("Debtor"), pursuant to 11 U.S.C. § 363(c)(2), Fed. R. Bankr. P. 4001(b), and Bankruptcy Rule 4001-2, hereby requests that this Court enter an order in the form attached hereto as Exhibit 1 (the "Interim Order"); (I) authorizing the Debtor to use cash collateral on an interim basis; (ii) scheduling a final hearing on the Debtor's use of cash collateral on a permanent basis ("Final Hearing"); and (iii) providing adequate protection to the secured creditors listed in paragraph 1 below on account of their respective prepetition liens and security interests, all of the foregoing in accordance with the proposed interim order (the "Interim Order") and the budget projections attached to the Interim Order as Exhibit 2 to this Motion (the "Budget" and the "Motion"). In support of the Motion, the Debtor respectfully states as follows:

Pursuant to Bankruptcy Code 4001:

1. The following disclosures are made pursuant to Bankruptcy Rule 4001(b)(1)(B):

    (a) **Name of the Entity with a Purported Interest in Cash Collateral:**

Debtor is indebted to the following secured creditors and are secured by the following. However, the Debtor makes no admission and takes no position at this time regarding the validity, enforceability, priority, or perfection of any of the obligations, security interests, and liens that may be asserted[1]:

---

[1] Debtor has listed the creditors with in interest in cash collateral in order of perfections pursuant to the filed UCC-1 financing statements

A. BFG Supply Co., LLC ("BFG")-Secured lien on all assets of the Debtor. The approximate amount of the debt is $66,000.00. Debtor disputes the security interest.

B. Amazon Capital Services ("Amazon")- Secured lien on all assets of the Debtor in the approximate amount of $285,998.00

C. Michigan Department of Treasury ("State of MI ")- Secured Tax lien. The approximate amount of the debt is $194,238.00

D. CT Corporation System ("CT")- Secured lien on all assets of the Debtor. The Debtor disputes debt asserts no funds owed.

(b) **The Purpose for the Use of Cash Collateral:** To fund debt service and related payments to the Secured Creditors with an interest in cash collateral, and to pay ordinary and necessary costs and expenses of operating the Debtor's business and preserving the value of the collateral and operating the Debtor's collateral in the amounts set forth in the Budget. Use of cash collateral is also needed to pay costs of the Debtor's professionals as may be approved by this Court.

( c) **The Material Terms and Duration of Use of Cash Collateral:** The Debtor is requesting the use of cash collateral, limited to the amounts, and for the purposes, set forth on the Budget, on an interim basis and pending a final hearing on the Motion (the "Interim Period"), pursuant to the terms of the Interim Order.

(d) **Liens, Cash Payments or Other Adequate Protection:** Replacement liens are provided under the Interim Order as to Secured Creditors.

2. Pursuant to Bankruptcy Rule 4001, and to the extent not otherwise described herein, the Debtor intends to use cash collateral to fund ordinary and necessary costs of operations, limited to the amounts set forth on the Budget, as the same may be supplemented after the Interim Period. Use of cash collateral is also needed to pay costs of the Debtor's professionals as may be approved by this Court. The use of cash collateral shall be subject to a carve-out (the "Carve-Out") for the payment of (1) Unpaid professional fees, expenses, and disbursements in amounts not to exceed the line items allocated to each professional under the Budget (in the aggregate, the "Professional Expense Cap"). The Carve-Out shall be segregated consistent with the Budget line items for professional fees, into a separate Debtor in Possession Account ("Professional Fee Account"). Funds in the Professional Fee

Account will remain property of the estate, and no professional may assert a lien or other interest against the Professional Fee Account. The funds in the Professional Fee Account may be disbursed to estate Professional upon court approval of their fees.

## Jurisdiction and Venue

3. This Court has core jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

4. No request has been made for the appointment of a trustee or examiner.

## Background

5. On June 20, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Debtor is authorized to operate its businesses as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. The Debtor's operations began in 2009 and it offered supplies to grow vegetables and flowers. In 2010, the Debtor started an online web site and through paid advertising exponentially grew its business. The Debtor spend the first 5 years of the company growing the online ecommerce site. In 2017, the Debtor expanded operations from 25,000 sqft to 75,000 sqft as business was growing and the extra space allowed for growth of ecommerce web site, Amazon, and Ebay sales. During the pandemic, the Debtor was considered an essential business(due to the supply of food processing products) and was allowed to stay open; however, the pandemic still decimated retail sales. In 2021 the Debtor had its best year and sales exceeded 30 million dollars and the Debtor employed more than 55 people. In 2022 the Debtor grossed 26 million dollars followed by 17 million in 2023. The rate of inflation, cost of goods, and decreasing margins has forced the Debtor to drastically reduce staffing and implement cost saving measures. Another significant cause of the Debtor's financial distress were changes in terms in the Amazon line of credit in that Amazon cancelled the revolving

line of credit and implemented a payment schedule that was next to impossible for the Debtor to maintain. In 2022, the Debtor was forced to change its market strategy due to historically profitable products not selling. The Debtor began selling products outside of its core which included water softener salt, pet food, and bird food. In 2024, the Google Merchant account for the Debtor was hacked and this negatively impacted cash flow and sent the Debtor into default on numerous forbearance agreements that were negotiated necessitating the need for a chapter 11 reorganization.

7. A Subchapter V Trustee has not yet been appointed or designated in this case, Anthony Portelli is the responsible person for the Debtor.

8. During June, July, August, September months of this case, the Debtor projects that it will need to spend $1,146,975.52 and in the first 30 days $278,002.46 to avoid immediate and irreparable harm.

9. The Debtor requests authority to spend these amounts in accordance with the Budget attached to this Motion, with a 10% variance for each line item or in total.

10. On the Petition Date, the Debtor, without admission, believes that the cash collateral, as defined in 11 U.S.C. 363 ("Cash Collateral") consists of the following:

a. Accounts Receivable totaling: $31,771

b. Available funds held in bank accounts: $1,254.00

c. Cash on hand: $500.00

11. For the reasons stated, as well as other reasons, to maintain and sustain its business operations and preserve the going concern value of its assets and enterprise value of its businesses, the Debtor determined it would be in its best interests and the best interests of its creditors and estate to initiate this Chapter 11 case.

12. The proposed cash collateral agreement is intended to permit the Debtor to utilize cash, accounts receivable and deposit accounts subject to the liens and security interests of Secured Creditors.

13. Subject to the terms of the Interim Order and the Budget, the Debtor seeks authority to use Secured Creditors cash collateral. The Debtor intends to use the cash collateral to pay debt service obligations to operate the Debtor's business in the ordinary course. Further, Debtor requests the Carve-Out from cash collateral to pay costs of the Debtor's professionals.

## Relief Requested

14. By this Motion, the Debtor seeks authority, pursuant to 11 U.S.C. § 363(c)(2), Fed. R. Bankr P. 4001(b), and Bankruptcy Rule 4001-2, to use Secured Creditors cash collateral, substantially in the manner and amounts reflected on the Budget. The Debtor also seeks the scheduling of a Final Hearing on Debtor's use of cash collateral.

## Basis for Relief

15. Section 363(a) of the Bankruptcy Code provides the definition of cash collateral. 11 U.S.C. § 363(a). Cash collateral is defined by § 363 to mean:

> . . . cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

16. A debtor is authorized to use cash collateral if the party with an interest in the cash collateral consents to its use or the Court authorizes its use after notice and hearing. 11 U.S.C. § 363(c)(2). A court can authorize use of cash collateral over the objection of the affected creditor where the debtor demonstrates that it can adequately protect the interests of the party holding an interest in the cash collateral. 11 U.S.C. § 363(e).

17. As reflected in the Budget, during the Interim Period, the Debtors intend to use the cash collateral to fund essential expenses relating to operation and maintenance of the Debtor's business and to pay costs of the Debtor's professionals as may be approved by this Court. Pursuant to 11 U.S.C. § 363(c)(2), the Debtor accordingly

requests authority of use cash collateral in accordance with provision of the Interim Order and the Budget to pay ongoing expenses incurred in the ordinary course of business associated with the Debtor's business and payment of prepetition secured debt and to pay costs of the Debtor's professionals as may be approved by this Court.

18. Provided that the Debtor (i) complies with the provisions of the Interim Order and the Budget, and (ii) provide the adequate protection contemplated therein (and as discussed in greater detail below), this Court should authorize the Debtor's use of cash collateral for expenditures in accordance with the Budget. The proposed use of cash collateral will adequately protect the security interests asserted by Secured Creditors and provide for the operation of the Debtor's business pending the Final Hearing. *See In re Addison Properties Ltd. P'ship,* 185 B.R. 766, 783 (Bankr N.D. Ill. 1995) (collecting cases regarding use of cash collateral and determination of adequate protection).

19. The Debtor believes that (I) the terms and provisions of the Interim Order are fair and reasonable under the circumstances and reflect the most favorable terms upon which the Debtor could obtain the necessary use of cash collateral, and (ii) Secured Creditors are entitled to the protection afforded under §§ 361 and 363(e) of the Bankruptcy Code as more specifically described in the Interim Order.

20. Without the ability to use cash collateral to pay for expenses associated with the operation of Debtor's business pending a Final Hearing, the value of the Secured Creditors collateral and of Debtor's business are in jeopardy of serious decline. The inability of the Debtor to utilize the cash, deposit accounts and receivables will not allow it to adequately run its day-to-day business operations. Therefore, the Debtor request interim authority to use cash collateral according to the Budget. Such interim use is necessary to avoid immediate and irreparable harm to the Debtor's business and the security interests of the Secured Creditors.

## Adequate Protection

21. Pursuant to 11 U.S.C. §§ 361 and 363(e), the Debtor requests authority to grant certain adequate protection to Secured Creditors on account of its prepetition liens and security interests by granting Secured Creditors replacement liens.

22. As set forth in the Interim Order, and the provisions of section 552 (11 U.S.C. § 552) of the Bankruptcy Code notwithstanding, the Debtor proposes to grant to Secured Creditors replacement liens and security interests on all further accounts receivable, cash and deposit accounts in the same priority, validity and extent that the Debtor's interest in the cash collateral existed as of the Petition Date.

23. The replacement liens shall be liens on the Debtor's assets which are created, acquired, or arise after the Petition Date, but limited to only those types and descriptions of collateral in which Secured Creditors held a prepetition lien or security interest. The replacement liens shall have the same priority and validity Secured Creditors respective pre-petition security interests and liens.

24. The Debtor's proposed use of cash collateral in accordance with the Budget, is, in the Debtor's judgment, sufficient for the Debtors to satisfy its cash needs in order to maintain and preserve the business.

25. Notice of this Motion has been given to: (a) the United States Trustee for the Eastern District of Michigan; (b) Secured Creditors; and ( c) top twenty unsecured creditors. The Debtor submits that in light of the nature of the relief requested, no further notice is required.

WHEREFORE, pursuant to 11 U.S.C. §§ 361, 362, 363(c)(2), 363(e), Fed. R. Bankr. P. 4001(b), 4001( c) and 4001(d), and Bankruptcy Rule 4001, the Debtor requests that this Court: (a) grant this Motion upon the terms set forth in the Interim Order; (b) schedule a Final Hearing; and (c) grant such other and further relief as is just and equitable.

GOLDSTEIN, BERSHAD,& FRIED, P.C.

By: <u>/s/ Scott M. Kwiatkowski</u>
    Scott M. Kwiatkowski (P67871)
    Attorney for Debtor
    4000 Town Center, Suite 1200
    Southfield, Michigan 48075
    (248) 355-5300
    scott@bk-lawyer.net

Dated: June 21, 2024

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

Grow Green MI Inc                      Case No.24-31158-jda
                                                   Chapter 11
           Debtor.                         Judge Applebaum
_____/

## FIRST DAY INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Upon consideration of Debtor's First Day Motion for Interim Authority to Use Cash Collateral and for Related Relief (the "Motion") filed by Grow Green MI Inc( "Debtor") requesting this Court's authorization to use the cash collateral of collectively BFG Supply Company ("BFG"), Amazon Capital Services ("Amazon"), Michigan Department of Treasury, and CT Corporation Services("Secured Creditors") pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001 due and proper notice of the Motion has been given to all parties entitled thereto; the Court has considered all relevant matters related thereto and is otherwise fully advised in the premises; a preliminary hearing was held on the Motion pursuant to the provisions of Fed. R. Bankr. P. 4001(c)(2); the Court finds that the Motion should be granted and specifically finds as follows:

    A. This Court has jurisdiction of this Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

    B. Notice of the Motion and the relief requested therein was served by the Debtor on Secured Creditors, the twenty largest unsecured creditors, and Office of the United States Trustee ("U.S. Trustee")

    C. The Debtor has demonstrated that it has an immediate need to use Cash Collateral, amount other things, to permit the continued operations of the Debtor.

D. Good cause has been shown for entry of this Order. This Order has been negotiated in good faith and at arm's length and the Court finds that the Secured Creditors have acted in good faith in connection with this Order.

E. The amount of cash the Debtor propose to use before entry of a final order granting the Motion is set forth in the Budget attached to the Motion. Specifically, during June, July, August, September months of this case, the Debtor projects that it will need to spend $1,146,975.52 and in the first 30 days $278,002.46 to avoid immediate and irreparable harm.

F. The value of the Debtor's estate will be maximized by the continuation of Debtor as an on-going business and the use of Cash Collateral is essential to such operation.

G. Prior to the Petition Date, the Debtor and the Secured Creditors were parties to various agreements.

H. As a consequence of the foregoing, the Secured Creditors claim they possess valid and perfected security agreements in substantially all of the Debtor's property, whether tangible or intangible, and wherever located, and whether now or hereafter acquired and all cash, cash equivalents, proceed, products, and profits in existence before, on, or after the Petition Date.

**NOW THEREFORE, IT IS ORDERED THAT:**

1. The Motion is hereby granted on an interim basis subject to the terms and conditions set forth in this order.

2. The Debtor is authorized to use the cash collateral of each of the Secured Creditors on an interim basis and pending a final hearing on the Motion ("Final Hearing") in a manner consistent with the budget attached to the Motion ("Budget") to pay actual, ordinary, and necessary expenses of maintaining its business operations and to pay costs of the Debtor's attorneys and accountants pursuant to the Budget ("Carve Out"). The Debtor is authorized to pay its attorneys subject to the Carve Out.

The Carve-Out will be segregated consistent with the Budget line items for professional fees, into a separate Debtor in Possession Account ("Professional Fee Account"). The funds in the Professional Fee Account will remain property of the estate, and no professional may assert a lien or other interest against the Professional Fee Account. The funds in the Professional Fee Account may be disbursed to estate Professional upon court approval of their fees.

3. Retroactive to the Petition Date and without the necessity of any additional documentation or filings, as adequate protection for and to protect the Secured Creditors against any diminution in value of the pre-petition collateral, the Debtor grants to Secured Creditors a fully perfected replacement lien having the same validity as, on the same types of collateral(whether arising prior to, on or after the Petition Date) as and of the same relative lien priority as held by the Secured Creditors respective pre-petition liens and security interests held with respect to the collateral ("Adequate Protections Liens"). The Adequate Protections Liens granted by this Interim Order are in addition to all security interests, liens, rights of Secured Creditors existing as of the Petition Date. The relative priorities and rights of payment between and among Secured Creditors as of the Petition Date shall remain the same as they were prior to the Petition Date and shall remain in full force and effect pursuant to this Order.

4. All liens and security interests in the Adequate Protections Liens granted to the Secured Creditors by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection although Secured Creditors may, in their sole discretion make any filing or recordation or other acts which each deems appropriate with respect to such perfection

5. The entry of this Order is without prejudice to the Debtor's right to seek authority from the Court to use additional cash collateral or borrow funds pursuant to 11

U.S.C.364 if the Debtor determines that the cash collateral authorized by this Order is insufficient.

6. The Debtor is authorized to use Secured Creditors cash collateral on an interim basis and pending a final hearing on the Motion ("Final Hearing") in a manner that is substantially consistent with the budget to pay actual, ordinary, and necessary expenses of maintaining its business operations and to pay costs of the Debtor's professionals. The Debtor's use of cash collateral will conform to the amounts set forth in the budget with a ten percent (10%) variance.

7. Objections to this Order must be filed within fourteen (14) days from the date of entry of the Order

8. The Motion is hereby set for a Final Hearing before this Court at _____ am/pm on _____, 2024 (such date or such later date to which the final hearing is adjourned or continued, the "Final Hearing Date"), at which time any party in interest may present any timely filed objections to the entry of a final order ("Final Order") in the form of, and containing relief substantially similar to, this Order. The Debtor will promptly serve a notice of the Final Hearing, together with a copy of this Order, by regular mail or electronic mail upon (i) the Office of the United States Trustee,)(ii)20 largest unsecured creditors, (iii) all secured creditors, (iv) the United States Trustee's Office.(v) any other party which has filed a request with this Court for notice in the Debtors' case and served such request upon the Debtor's counsel. The notice of the Final Hearing will state that objections to the entry of a Final Order on the Motion will be in writing and will be filed with the United States Bankruptcy Court Clerk for the Eastern District of Michigan no later than _____, 2024 which objections will be served so that the same are received on or before _____ pm (Eastern Standard Time) of such date by: (i) Scott Kwiatkowski, Goldstein, Bershad & Fried, P.C. counsel to the Debtor, 4000

Town Center, Suite 1200, Southfield, Michigan 48075; (ii) the Office of the United States Trustee; (iii) Secured Creditors; (iv) Office of the United States Attorney for the Eastern District of Michigan, US Department of Justice. Any objections by creditors or other parties in interest to any of the provisions of this Order will be deemed waived unless filed and served in accordance with this paragraph.

9. If no timely objections are filed, this Order will become a final order without any further action by the Court.

10. The Debtor and Secured Creditors may make modifications or amendments to the Budget or this Order, to take effect only upon written notice approved by all parties, and all actions taken pursuant to such modified Budget will be and hereby are expressly authorized hereunder.

11. The Debtor's authority to use the Secured Creditors cash collateral under this Order will be effective immediately and will continue until otherwise ordered by the Court.

# EXHIBIT 2

| Month Week Ending | 6/21 - 6/30 | July | August | September | Total |
|---|---|---|---|---|---|
| Net Cash Received | $ 50,000.00 | $ 330,000.00 | $ 400,000.00 | $ 380,000.00 | $ 1,160,000.00 |
| **Operating Cash Disbursements** | | | | | |
| Inventory Ordering | $ 20,000.00 | $ 210,000.00 | $ 280,000.00 | $ 260,000.00 | $ 770,000.00 |
| Payroll and Payroll Tax/Withholdings | $ 8,225.28 | $ 27,417.60 | $ 27,417.60 | $ 27,417.60 | $ 90,478.08 |
| Health Insurance (BC/BS) | $ 900.30 | $ 3,001.00 | $ 3,001.00 | $ 3,001.00 | $ 9,903.30 |
| Postage | $ 2,100.00 | $ 7,000.00 | $ 10,000.00 | $ 10,000.00 | $ 29,100.00 |
| DTE | $ 800.00 | $ 800.00 | $ 800.00 | $ 800.00 | $ 3,200.00 |
| Consumers | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 800.00 |
| AT&T | $ 380.00 | $ 380.00 | $ 380.00 | $ 380.00 | $ 1,520.00 |
| Technology Subs | $ 860.00 | $ 860.00 | $ 860.00 | $ 860.00 | $ 3,440.00 |
| Supplies | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,000.00 |
| Insurance - General | | $ 4,600.00 | $ 4,600.00 | $ 4,600.00 | $ 13,800.00 |
| Rent | | $ 13,500.00 | $ 13,500.00 | $ 13,500.00 | $ 40,500.00 |
| sales tax | $ 500.00 | $ 3,300.00 | $ 4,000.00 | $ 3,800.00 | $ 11,600.00 |
| Advertising (google ads) | $ 3,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 33,000.00 |
| Bank and Credit Card Fees | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,000.00 |
| Other Administrative Expense | | | | | |
| **Total Cash Disbursements For Operations** | $ 37,965.58 | $ 282,058.60 | $ 355,758.60 | $ 335,558.60 | $ 1,011,341.38 |
| **Net Cash Flow From Operations** | $ 12,034.42 | $ 47,941.40 | $ 44,241.40 | $ 44,441.40 | $ 148,658.62 |
| Legal and Professional Fees | | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 22,500.00 |
| Sub V Trustee fee | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 6,000.00 |
| Adequate protection payemnt for Vehicles | | $ 2,000.00 | $ 2,000.00 | $ 2,000.00 | $ 6,000.00 |
| Variance 10% | $ 3,796.56 | $ 28,205.86 | $ 35,575.86 | $ 33,555.86 | $ 101,134.14 |
| **Total other** | $ 5,296.56 | $ 39,205.86 | $ 46,575.86 | $ 44,555.86 | $ 135,634.14 |
| Total Expenses | $ 43,262.14 | $ 321,264.46 | $ 402,334.46 | $ 380,114.46 | $ 1,146,975.52 |
| **Net Cash Flow** | $ 6,737.86 | $ 8,735.54 | $ (2,334.46) | $ (114.46) | $ 13,024.48 |
| **Cumulative** | $ 6,737.86 | $ 8,735.54 | $ 6,401.08 | $ 6,286.62 | $ 28,161.10 |